UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DISTRIBUTOR SERVICE, INCORPORATED, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:13-cv-01409-JMS-DKL |
| | ) | |
| RUSTY J. STEVENSON and RUGBY IPD CORP., | ) | |
| d/b/a RUGBY ARCHITECTURAL BUILDING | ) | |
| PRODUCTS, | ) | |
|     *Defendants.* | ) | |

## ORDER

Presently pending before the Court are: (1) a Motion for Partial Summary Judgment filed by Plaintiff Distributor Service, Incorporated ("DSI"), [Filing No. 41]; and (2) a Cross-Motion for Partial Summary Judgment filed by Defendant Rusty J. Stevenson, [Filing No. 46].

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can

result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The fact that cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the non-moving party with respect to each motion. *Id.* at 843.

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:

DSI is a seller and distributor of wholesale specialty building products to businesses in the Middle Atlantic and Midwest regions of the country. [Filing No. 41-1 at 1.] DSI has eight locations in Pennsylvania, Ohio, Indiana, Kentucky, and Michigan, and employs over one-hundred employees. [Filing No. 41-1 at 1.] Defendant Rugby IPD Corp., doing business as Rugby Architectural Building Products ("Rugby"), is also in the business of selling and distributing wholesale specialty building products, does so throughout the United States including in Indiana, and is a direct competitor of DSI. [Filing No. 41-1 at 1.] Mr. Stevenson is a former employee of DSI, and is currently employed by Rugby. [Filing No. 41-1 at 1-2.]

**A. DSI's Business**

The specialty building products sold and distributed by DSI "are not finished products like those a consumer may buy off the shelf in a retail store, but are specialized materials that go into the products manufactured or built by DSI's customers. Some of the primary product categories DSI distributes in Indiana include plywood, melamine board, raw board core, wood finishes, and laminate." [Filing No. 41-1 at 2.] DSI's customers have "an in-depth knowledge of the products they need and very specialized requirements and specifications for the products they purchase." [Filing No. 41-1 at 2.] DSI maintains Customer Lists, which it claims are confidential and which it considers proprietary. [Filing No. 41-1 at 2.] DSI also has information it calls Customer Product Preferences, which include "unique specifications for the products DSI provides – specifications that are specially suited to the manufacturing or building process of the particular customer and its ultimate products." [Filing No. 41-1 at 2.] DSI also claims its pricing is "highly customized from customer to customer for the same products and product categories, depending on a number of variables that are specific to each customer, and even variables unique to specific projects for each customer," which it refers to as Competitive Pricing. [Filing No. 41-

1 at 3.] DSI negotiates special vendor costs with the manufacturers it represents that are customized by product and "in many cases are unique to particular customers or even projects for particular customers," which it refers to as Competitive Cost Structure. [Filing No. 41-1 at 3.]

DSI's Customer Lists, Customer Product Preferences, Competitive Pricing, and Competitive Cost Structure "are the cornerstone of DSI's ability to compete effectively in the specialty building products industry in Indiana," and include "information that derives economic value from not being generally known to other persons who can obtain economic value from its disclosure or use." [Filing 41-1 at 4.]

**B. Mr. Stevenson's Employment With DSI**

DSI hired Mr. Stevenson in October 1999 when it opened an Indianapolis Branch, and "with the intention of training [him] to be a salesman and teaching him the specialty building products industry and business." [Filing No. 41-1 at 5.] When DSI hired Mr. Stevenson, he had no sales experience in the specialty building products industry or any related industry. [Filing No. 41-1 at 5.] During his employment, DSI "invested significant time and resources…in teaching [Mr.] Stevenson about the specialty building products industry, in general and in Indiana, and about DSI's specialty building products, DSI's Indiana customers, and the manufacturers represented by DSI in Indiana." [Filing No. 41-1 at 5.] Also during his employment, Mr. Stevenson had access to all of DSI's Customer Lists, Customer Product Preferences, Competitive Pricing, and Competitive Cost Structure for all customers of the Indianapolis Branch and for all manufacturers represented by DSI in the Indianapolis Branch. [Filing No. 41-1 at 4.]

In April 2005, DSI promoted Mr. Stevenson to Sales Manager for the Indianapolis Branch, where he was "a trusted and critical part of DSI's presence and public profile throughout the Indiana market." [Filing No. 41-1 at 5.] Mr. Stevenson was responsible for hundreds of cus-

tomers in Indiana, and also managed the sales efforts of DSI's two other salesmen in the Indianapolis Branch. [Filing No. 41-1 at 5.]

In June 2009, Mr. Stevenson signed a Confidentiality and Non-Competition Agreement (the "Agreement") with DSI which contained, among other provisions, ones entitled "Non-Competition/Non-Solicitation" (the "Non-Compete Provision" and the "Non-Solicitation Provision"), and "Non-Disclosure of Confidential Information" (the "Non-Disclosure Provision"). [Filing No. 41-1 at 5-12.]

On August 2, 2013, Mr. Stevenson resigned from DSI, and advised that he was going to work for Rugby as the general manager in charge of Rugby's Indianapolis Branch. [Filing No. 41-1 at 6.] Following the announcement of his resignation, Mr. Stevenson told Dave Dascenzo, the General Sales Manager for DSI, that "he would be the top manager for Rugby's Indianapolis Branch and would have sales and sales management responsibilities for Rugby throughout Indiana." [Filing No. 41-1 at 6.]

### C. The Lawsuit

On September 5, 2013, DSI initiated this lawsuit against Mr. Stevenson and Rugby, [Filing No. 1], and on September 11, 2013 it filed the operative Amended Verified Complaint for Injunctive Relief and Damages, [Filing No. 11]. DSI asserts claims for: (1) breach of the Non-Compete Provision, [Filing No. 11 at 9-10]; (2) breach of the Non-Solicitation Provision, [Filing No. 11 at 10-11]; (3) breach of the Non-Disclosure Provision, [Filing No. 11 at 11-12]; (4) recovery of attorneys' fees and expenses under the Agreement, [Filing No. 11 at 13]; (5) misappropriation of trade secrets, [Filing No. 11 at 13-15]; (6) breach of duty of loyalty, [Filing No. 11

at 15-16]; and (7) tortious interference, [Filing No. 11 at 16-17].[1] DSI seeks an injunction en-joining Mr. Stevenson and Rugby from "further conduct constituting breach of contract, misap-propriation of the plaintiff's trade secrets, tortious interference with the plaintiff's contracts and other business relations;…failing to return to DSI immediately all originals and copies of any materials that contain DSI's trade secrets and other confidential information; and…failing to take certain other actions to protect DSI's interests pending a hearing and litigation of the matter." [Filing No. 11 at 17.]

On November 7, 2013, DSI filed a Motion for Preliminary Injunction. [Filing No. 24.] After consultation with the Magistrate Judge, DSI withdrew the Motion for Preliminary Injunc-tion and the parties agreed to file cross motions for partial summary judgment to "accommo-dat[e] the parties' agreement to seek a ruling on the enforceability of the restrictive covenants in [the Agreement]." [Filing No. 43 at 1.] Those cross motions for partial summary judgment, [Filing No. 41; Filing No. 46], are the motions currently pending before the Court, and relate on-ly to the narrow issue of whether the Non-Compete Provision, the Non-Solicitation Provision, and the Non-Disclosure Provision are enforceable – and not to whether Mr. Stevenson has vio-lated them.

### III.
### DISCUSSION
### A.  Choice of Law

A federal court sitting in diversity must apply the choice of law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC, 589 F.3d 873, 879 (7th Cir. 2009)* ("Because the dis-

---

[1] While it is not clear from the Amended Complaint which counts are asserted against which de-fendants because DSI refers to "defendants' conduct" or "defendants' actions" in each count, it appears that Counts 1 through 4 and 6 are asserted against Mr. Stevenson only (since those counts also mention Mr. Stevenson specifically, and not Rugby), while Counts 5 and 7 are as-serted against both Mr. Stevenson and Rugby.

trict court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules determine the applicable substantive law").  The parties appear to agree that Indiana law applies to DSI's claims.  [*See* Filing No. 42 at 12-13 (DSI arguing that Indiana law applies); Filing No. 47 (Mr. Stevenson only discussing and citing to Indiana law).]  Absent a disagreement, the Court will apply Indiana law.  *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits….*Courts do not worry about conflict of laws unless the parties disagree on which state's law applies*.  We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)") (emphasis added).

### B.  Enforceability of the Agreement

"Indiana courts have long stated that covenants which restrict a person's employment opportunities are strongly disfavored." *Buffkin v. Glacier Group*, 997 N.E.2d 1, 9-10 (Ind. Ct. App. 2013); *see also Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728-29 (Ind. 2008) ("This Court has long held that noncompetition covenants in employment contracts are in restraint of trade and disfavored by the law"); *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind. Ct. App. 2011) ("Indiana courts strongly disfavor as restraints of trade covenants not to compete in employment contracts").

"To be enforceable, a noncompetition agreement must be reasonable," and "[u]nlike reasonableness in many other contexts, the reasonableness of a noncompetition agreement is a question of law." *Krueger*, 882 N.E.2d at 729.  The employer must first show that the agreement protects a legitimate interest, and then that the agreement is "reasonable in scope as to the time, ac-

tivity, and geographic area restricted." *Buffkin*, 997 N.E.2d at 10 (citing *Krueger*, 882 N.E.2d at 729). "Non-competition agreements are strictly construed against the employer." *Buffkin*, 997 N.E.2d at 10 (citing *Krueger*, 882 N.E.2d at 729; *Press-A-Dent, Inc. v. Weigel*, 849 N.E.2d 661, 668-69 (Ind. Ct. App. 2006)).

A legitimate protectable interest is "an advantage possessed by an employer, the use of which by the employee after the end of the employment relationship would make it unfair to allow the employee to compete with the former employer." *Buffkin*, 997 N.E.2d at 10 (quoting *Coates*, 942 N.E.2d at 913). Under Indiana law, goodwill, including "secret or confidential information such as the names and addresses of customers and the advantage acquired through representative contact," is a legitimate protectable interest. *Buffkin*, 997 N.E.2d at 11. Goodwill also includes "the competitive advantage gained for an employer through personal contacts between employee and customer when the products offered by competitors are similar." *Id.*

### 1. Legitimate Protectable Interest

At the outset, the Court must first determine whether DSI has shown that it has a legitimate interest protected by the Agreement. *See Norlund v. Faust*, 675 N.E.2d 1142, 1154 (Ind. Ct. App. 1997) ("An employer may not simply forbid his employee from subsequently operating a similar business. The employer must have an interest which he is trying to legitimately protect. There must be some reason why it would be unfair to allow the employee to compete with the former employer. The employee should only be enjoined if he has gained some advantage at the employer's expense which would not be available to the general public").

DSI argues that the business interests it seeks to protect through the Agreement are "the customer relationships it established and cultivated over many years through [Mr.] Stevenson as DSI's salesman, sales manager, and branch manager, and the trade secrets and other confidential

information he received and used to cultivate those relationships. These interests are embodied in DSI's Customer Lists, Customer Product Preferences, Competitive Pricing, and Competitive Cost Structure…." [Filing No. 42 at 16.] Mr. Stevenson argues – only in connection with the Non-Disclosure Provision – that the information DSI seeks to protect is not confidential, so it does not have a legitimate protectable interest. [Filing No. 47 at 23-24.] Specifically, Mr. Stevenson asserts that "information about customers in the specialty building product industry is not confidential[; t]he specialty building product industry is a discrete market, and the customers in Indiana are generally known to the various competitors[;]…DSI and Rugby have been competing for the same customers for years[;]…[and] customers in the specialty building product industry are willing to 'shop around' for the best price and will reveal their needs and competing quotes to competitive salespeople." [Filing No. 47 at 24.]

Under Indiana law, "the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's 'good will' and are a protectible interest which may justify a restraint…." *Krueger*, 882 N.E.2d at 729 (citation omitted); *see also Unger v. FFW Corp.*, 771 N.E.2d 1240, 1244 (Ind. Ct. App. 2002) ("Goodwill includes secret or confidential information such as the names and addresses of customers and the advantage acquired through representative contact"). As the Indiana Court of Appeals has noted, "[i]n industries where personal contact between the employee and the customer is especially important due to the similarity in the product offered by the competitors, the advantage acquired through the employee's representative contact with the customer is part of the employer's good will, regardless of whether the employee had access to confidential information." *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 173 (Ind. Ct. App. 2008).

In other words, information derived from an employee's contacts with customers is a le-

gitimate protectable interest even if it is not confidential. *See also Clark's Sales & Serv. v. John D. Smith & Ferguson Enters.*, 4 N.E.3d 772, *17-18 (Ind. Ct. App. 2014) (finding a legitimate protectable interest where employee "had the advantage of having been part of [the employer's] efforts to build goodwill with its business accounts and referral network of home builders, remodelers, and kitchen designers, and that such advantage is not available to a person in the general public"). The Court finds that the goodwill DSI has built through Mr. Stevenson, reflected in information it has obtained such as Customer Product Preferences, is a legitimate protectable interest. [2] Next, the Court will consider whether the Non-Compete Provision, the Non-Solicitation Provision, and the Non-Disclosure Provision are enforceable.

### 2. *The Non-Compete Provision*

The Agreement's Non-Compete Provision states:

> Employee covenants and agrees that while employed by the Company and for a period of one (1) year after termination of such employment, whether the termination is voluntary or involuntary and regardless of the reason therefor, Employee will not without the express written authorization of the President of the Company engage in any of the following:…Providing services as an employee, consultant or independent contractor for any entity which is or plans to become, in whole or in part, engaged in any Competitive Business Activity within any state in which Employee sold or promoted products and/or services [f]or the Company, and/or serviced customer accounts while employed by the Company….

[Filing No. 41-1 at 8]. The Agreement defines Competitive Business Activity as "the manufacture, sale or distribution of products, or sale of services, which products or services are the same or similar to, or may be substituted for, those manufactured, sold, distributed or provided by [DSI] or any of its affiliates, and research and development associated with such products."

[Filing No. 41-1 at 8.]

_____

[2] The Court need not decide whether each item claimed by DSI to be a legitimate protectable interest (including its Customer Lists, which Mr. Stevenson argues are well known to competitors) is in fact so. It is enough that DSI's goodwill is protectable. *Gleeson*, 883 N.E.2d at 174.

DSI argues that the one-year time restriction is reasonable, the geographic territory is reasonable "because it is framed to cover only the area in which [Mr.] Stevenson served DSI," and the scope of activities is reasonable because it is limited to competitive business activity, and does not use overreaching language that would "'cover the waterfront' of potential involvement by [Mr.] Stevenson to include even innocent and obscure jobs that have nothing to do with competing against DSI." [Filing No. 42 at 16-31.] Finally, DSI argues that even if the Non-Compete Provision is unreasonable, it would still be enforceable because Mr. Stevenson possessed trade secrets through his "unrestricted access to [DSI']s Customer Lists, Customer Product Preferences, Competitive Pricing, and Competitive Cost Structure for all Indiana customers." [Filing No. 42 at 31-33.]

Mr. Stevenson responds that the scope of activities covered by the Non-Compete Provision is unreasonable because the provision prohibits him from working for a competitor in any capacity. [Filing No. 47 at 9-13.] He asserts that the Court may not re-write the Non-Compete Provision to make it enforceable, as DSI argues. [Filing No. 47 at 14-17.] He also contends that the information at issue does not constitute trade secrets and that, even if it did, the case cited by DSI to support its argument is inapposite. [Filing No. 47 at 17-20.] Finally, Mr. Stevenson argues that DSI's Motion for Partial Summary Judgment should be denied because there is a genuine issue of material fact regarding whether his sales territory included all of Indiana and, if it did not (as Mr. Stevenson argues), then the Non-Compete Provision would be overbroad as to geographic scope because it applies to activity "within any state" in which he sold or promoted products or services for DSI. [Filing No. 47 at 20-22.]

On reply, DSI argues again that the Non-Compete Provision is not an "in-any-capacity" clause, that it is not advocating for reformation of the provision, and that any issue regarding Mr.

Stevenson's territory within Indiana is not material to the issue of whether the geographic scope of the Non-Compete Provision is reasonable as a matter of law. [Filing No. 49 at 2-7.] Mr. Stevenson reiterates his arguments in his reply. [Filing No. 50 at 1-5.]

In order to be enforceable, the Non-Compete Provision must be reasonable in time, geographic territory, and scope of activities. *Clark's Sales & Serv.*, 4 N.E.3d 772 at *18 (employer "has the burden to establish that the restrictive covenant is reasonable in scope as to the time, activities, and geographic area restricted"). As set forth above, DSI and Mr. Stevenson disagree on the reasonableness of the scope of activities the Non-Compete Provision covers and the geographic area to which it applies.[3]

### a. Scope of Activities

The Non-Compete Provision prohibits an employee from "[p]roviding services as an employee, consultant or independent contractor for any entity which is or plans to become, in whole or in part, engaged in any Competitive Business Activity within any state in which [DSI] sold or promoted products and/or services [f]or the Company, and/or serviced customer accounts while employed by the Company." [Filing No. 41-1 at 8.] DSI insists that the Non-Compete Provision is reasonable in scope of activities because it is limited to "Competitive Business Activities" as defined in the Agreement and it does not include overly broad language like "in any capacity" as provisions rejected by Indiana courts have. But the effect of the plain language of the Non-Compete Provision is that it *does* cover any type of activity Mr. Stevenson would engage in for a competitor.

---

[3] The parties agree, and the Court holds, that the one-year time period contained in the Non-Compete Provision (and in the Non-Solicitation Provision discussed below) is reasonable. *See, e.g., Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1098 (N.D. Ind. 1998) (finding two-year restriction in non-compete provision was reasonable); *Zimmer, Inc. v. Masters*, 2014 WL 1317090, *4 (N.D. Ind. 2014) ("covenants' one-year prohibition is reasonable under Indiana law").

While DSI argues that the provision "limits its reach to 'Competitive Business Activity,'" [Filing No. 42 at 19], its construction is a contortion of the language it drafted. The focus of the "Competitive Business Activity" definition in the instant contract is on activities performed by the competitor, not on activities performed by the employee. *See, e.g., Gleeson*, 883 N.E.2d at 175-76 (provisions reasonable when they are limited to services provided during former employment). With respect to prohibitions applicable to the employee the definition is significantly more broad. It applies to providing services "as an employee, consultant or independent contractor" to any entity which is, or plans to become, engaged in any "Competitive Business Activity." [Filing No. 41-1 at 8.] While the words "in any capacity" are not explicitly stated, they are certainly implied.

DSI also attempts to argue that "in-any-capacity" non-compete provisions are enforceable, stating that "a number of Indiana cases have held [in-any-capacity] non-competition clauses enforceable, sometimes expressly addressing the [in-any-capacity] issue, and other times simply ignoring it." [Filing No. 42 at 22.] But the cases DSI cites simply do not stand for that proposition. *See Coates*, 942 N.E.2d at 916 (dealt with whether the term "Employer" in non-compete provision was overly broad, and not with whether provision was unenforceable because it restricted employee from working for new employer in any capacity. The court there noted, however, that a non-compete provision is invalid if it "restrict[s] an employee from working for any competitor of a prior employer in any capacity"); *Pathfinder Communs. Corp. v. Macy*, 795 N.E.2d 1103, 1114 (Ind. Ct. App. 2003) (concluding that non-compete provision restricting employee from "engag[ing] in activities" for a competitor was overbroad as it prevented the employee from "being employed in any capacity" by any competitor, although using "blue-penciling" to strike out that provision because – unlike here – it was divisible from other parts of

the provision); *Cohoon v. Fin. Plans & Strategies, Inc.*, 760 N.E.2d 190, 196 (Ind. Ct. App. 2001) (holding that non-compete provision which prohibited employee from working in "any competitive business within the territory" was enforceable because of additional provision in agreement – not present in the Agreement in this case – that stated "nothing in this agreement shall be deemed to prohibit the employee from continuing or commencing a personal relationship or non-competitive business relationship"); *Titus v. Rheitone, Inc.*, 758 N.E.2d 85 (Ind. Ct. App. 2001) (although referred to as a "covenant not to compete," the case involved a non-solicitation provision); *McGlothen v. Heritage Environmental Servs., LLC*, 705 N.E.2d 1069 (Ind. Ct. App. 1999) (finding non-compete provision protected a legitimate interest, and not discussing scope of activity covered by provision). The last case DSI cites, *Unger v. FFW Corp.*, 771 N.E.2d 1240 (Ind. Ct. App. 2002), held that a non-compete provision was reasonable in scope of activity where it prohibited the employee from "participating in a business that is competitive with [the first employer]." *Id.* at 1245. The Court agrees with Mr. Stevenson that *Unger* appears to be an outlier, and indeed the Indiana Court of Appeals subsequently declined to follow *Unger*, noting that "recent cases have followed *Burk* [*v. Heritage Food Service Equipment, Inc.*, 737 N.E.2d 803 (Ind. Ct. App. 2000)]," which held that a non-compete provision which – like the one here – prohibited the employee from working for a competitor in any capacity was unenforceable. *Gleeson*, 883 N.E.2d 164, 175-76. Like those cases decided after *Unger*, the Court finds that the "in-any-capacity" Non-Compete Provision here is unenforceable because it is overly broad as to the scope of activity it covers.

The bottom line is that the plain language of the Non-Compete Provision would prohibit Mr. Stevenson from being an "employee" of an entity who engages in "Competitive Business Activity," whether he is in sales, works as a janitor, or maintains the second employer's lawn.

Thus, it is overbroad and unenforceable. *See Clark's Sales*, 4 N.E.3d 772 at *20-21 (non-compete provision overbroad where "the activities prohibited are unrelated to the services [the employee] actually provided to [the employer] during his employment….[A]lthough [the employee] was an inside appliance salesman…, he would be prohibited from performing maintenance, repair, delivery, ordering, or pricing services, to name just a few, to anyone who was a customer of [the employer during his fourteen-year employment]…because those services are competitive to services offered by [the employer]").[4]

### b. Trade Secrets

DSI argues that what it calls the "Ackerman principle" makes the Non-Compete Provision enforceable even if the Court finds – as it has – that the provision is overly broad. [Filing No. 42 at 31-33.] It relies upon *Ackerman v. Kimball Int'l*, 634 N.E.2d 778, 782 (Ind. Ct. App. 1994), for the proposition that "a non-competition clause on its face was unenforceable because it lacked a geographic limitation, but…became enforceable because the employee was given trade secrets." [Filing No. 42 at 31.] DSI's application of *Ackerman* to this case is flawed for several reasons.

First, even assuming that the information DSI seeks to protect here constitutes trade secrets, *Ackerman* simply does not stand for DSI's broad proposition that an unenforceable non-compete provision automatically becomes enforceable because trade secrets are involved. In

---

[4] The Non-Compete Provision here even goes a step further than the one at issue in *Clark's Sales*. The *Clark's Sales* provision prohibited the employee from providing any services competitive to those offered by Clark's, 4 N.E.3d 772 at *20-21, and the court still found it to be overly broad. Here, the Non-Compete Provision prohibits an employee from providing any services at all to a competitor, regardless of whether the services themselves are competitive. All that is necessary is that the competitor provide competitive services, but the employee's services to the second employer need not be the competitive services. For example, Mr. Stevenson could not serve lunch in Rugby's cafeteria or change lightbulbs in Rugby's offices because Rugby competes with DSI. This makes the Non-Compete Provision overly broad and unreasonable.

fact, the Indiana Supreme Court, in discussing the Indiana Court of Appeals' decision in *Ackerman*, stated:

> Relying on *Donahue [v. Permacel Tape Corp.*, 127 N.E.2d 235 (Ind. 1955)], the Court of Appeals concluded, in essence, that if trade secrets were involved, then the covenants not to compete were enforceable notwithstanding the lack of geographical limitation on the restrictions….*Donahue*, however, only says that if trade secrets are involved, then a covenant not to compete without geographic limitation is not *per se* unreasonable and void. We think that once it is established that trade secrets are involved, and when the covenant not to compete contains no geographic limitation, it must still be inquired further whether that lack of geographic limitation – together with all the other provisions of the covenant – is reasonably necessary to protect the employer, is not unreasonably restrictive of the employee, and is not against public policy.

*Ackerman v. Kimball Int'l*, 652 N.E.2d 507, 510 (Ind. 1995) (citing *Harvest Ins. Agency v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686, 688-89 (Ind. 1986)).

Second, *Ackerman* dealt with the absence of a geographic limitation. It had nothing to do with the scope of activities prohibited by a non-compete provision, and DSI has not cited any cases extending it to that context. And finally, the Indiana Supreme Court noted in *Ackerman* that the trial court had based the injunctive relief it granted on Indiana Code § 24-2-3-3 (giving trial court broad discretion to grant injunctive relief "to eliminate commercial advantage that otherwise would be derived from the misappropriation [of trade secrets]"), and not on the language of the non-compete provision.

Even if the Court assumes without deciding that the information at issue here constitutes

trade secrets,[5] *Ackerman* does not support disregarding the fact that the scope of activities prohibited by the Non-Compete Provision is overly broad simply because trade secrets are involved. DSI's characterization of *Ackerman* borders on misleading, and the Court rejects its arguments based on the so-called "Ackerman principle."

The Non-Compete Provision is unenforceable because it is overbroad and unreasonable in terms of the scope of activities it prohibits. Accordingly, the Court need not determine whether it is also unenforceable based on the geographic area it covers.[6] Mr. Stevenson is entitled to summary judgment on Count 1 of the Amended Complaint, asserting breach of the Non-Compete Provision.

### 3. The Non-Solicitation Provision

The Agreement's Non-Solicitation Provision provides:

Employee covenants and agrees that while employed by the Company and for a period of one (1) year after termination of such employment, whether the termina-

---

[5] The Court notes that, though it need not decide the issue, it has serious doubts regarding whether the information at issue here constitutes trade secrets. *See, e.g.*, *Standard Register Co.*, 30 F. Supp. 2d at 1094 (finding similar information did not constitute trade secrets under Indiana law and stating "[t]he information as to the identity of Standard Register's customers or potential customers is something that is already readily known in the industry[; t]he methods of obtaining and retaining customers is also something that is either generally known, or readily ascertainable without a substantial investment of time, expense or effort[;]" "[t]he contention that customer needs and the processes for the design, assembly and selling of business forms constitutes trade secrets also seems problematic" because "the evidence reveals that customers are quite willing to 'shop around,' and that they will reveal their needs and competing quotes to competitive salesmen[;]" and "once a form has been designed, practically any 'jobber' can duplicate an existing form for a customer, and within limits can presumably redesign one, too").

[6] The Court also need not determine whether it would be appropriate for it to re-write the Non-Compete Provision through "blue penciling." *See Pathfinder*, 795 N.E.2d at 1114 ("[I]f a covenant is clearly divisible into parts, and some parts are reasonable while others are unreasonable, a court may enforce the reasonable portions only…..Utilizing that process, which is known as 'blue-penciling,' the court strikes the unreasonable provisions from the covenant….However, the court is prohibited from adding terms that were not originally part of the agreement"). DSI specifically states that it "has not proposed to 'blue pencil' any unlawful language from the non-competition clause precisely because it has no unlawful language…." [Filing No. 49 at 3 (emphasis omitted).]

tion is voluntary or involuntary and regardless of the reason therefor, Employee will not without the express written authorization of the President of the Company engage in any of the following:…Soliciting or inducing, or attempting to solicit or induce, any customer or prospective customer of the Company with which Employee communicated while employed by the Company, to purchase competitive products or services from a source other than the Company, or to cease doing business with the Company, or to curtail or limit such business.

[Filing No. 41-1 at 8-9.]

DSI argues that the Non-Solicitation Provision is reasonable in time (one year), geography (which is not specified, but the provision is limited to those customers or prospective customers with which Mr. Stevenson communicated), and scope of activity (which "is drawn narrowly to apply to DSI's legitimate protectible interest"). [Filing No. 42 at 34-37.] Mr. Stevenson argues that the Non-Solicitation Provision is unenforceable because it prohibits contact with prospective customers during his entire fourteen years of employment. [Filing No. 47 at 22-23.] Specifically, he argues that the plain language of the Non-Solicitation Provision would prevent him from contacting "entities that are not current customers of DSI (and may never have been customers) that he only contacted *once* during his *fourteen* years of employment with DSI." [Filing No. 47 at 23 (emphasis in original).] DSI replies that prospective customers are considered a legitimate protectable interest, and that because the Non-Solicitation Provision "requires both communication and prospective customer status before someone falls into the ambit of the restriction," it is reasonable based on the meaning of "prospective customer" "in business." [Filing No. 49 at 8 (emphasis omitted).]

The Court finds that the plain language of the Non-Solicitation Provision is overbroad. The Indiana Court of Appeals decision in *Clark's Sales*, 4 N.E.3d 772, is instructive. There, the non-solicitation provision – which was slightly different than the Non-Solicitation Provision here – prohibited the employee from soliciting or providing competitive services to anyone who was a

- 18 -

customer of the employer during the employee's employment.  *Id.* at *19.  It did not apply to prospective customers, as the Non-Solicitation Provision does here.  The Indiana Court of Appeals still found that the provision was overbroad because it spanned the employee's entire term of employment, and was so broad it would be impossible to enforce.  *Id.* at *19-20 (stating "although present customers are a protectable interest of an employer, a contract prohibiting contact with any past or prospective customers, no matter how much time has elapsed since their patronage ceased, was vague and too broad").  The Non-Solicitation Provision here also has no time constraint and, although it is limited to customers Mr. Stevenson had contact with unlike the provision at issue in *Clark's Sales*, it would also apply to prospective customers that never became DSI customers.  *See also Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 214 (Ind. Ct. App. 1982) (finding that non-solicitation provision which applied to contact with prospective clients and was not limited in time was unenforceable because it was "vague and too broad," but applying blue pencil doctrine and only enforcing provision as to present customers).

DSI attempts to impose limits on the Non-Solicitation Provision that do not appear in the plain language of the provision, and the Court rejects those attempts.  It argues that the term "prospective customer" is "well known," a "widely used term[] in business," has a "widely accepted commercial meaning, especially within particular industries," and implies "real prospects for business."  [Filing No. 49 at 8.]  But it provides no citations for its argument.  To the contrary, the Court must interpret the plain meaning of the Non-Solicitation Provision's language, and not what DSI thinks it means or thinks Mr. Stevenson should assume it means.

DSI also urges the Court to "blue pencil" the term "any prospective customer" out of the Non-Solicitation Provision.  Even if the Court were to do so, however, the temporal problem with the Provision would remain – it would still apply to all customers Mr. Stevenson had con-

tact with at any time during his fourteen-year employment, which the Indiana Court of Appeals recently held is overly broad. *Clark's Sales*, 4 N.E.3d 772 at *20 (employer's "attempt to protect a customer base spanning the entire term of [employee's fourteen-year] employment is overly broad and unreasonable"). Blue penciling can only be used to eliminate language that is divisible from the rest of the provision at issue, and not to add language. *Clark's Sales*, 4 N.E.3d at *25-26 (if an agreement is "divisible into parts, and some parts are reasonable while others are unreasonable, a court may enforce the reasonable portions only….When blue-penciling, a court must not add terms that were not originally part of the agreement but may only strike unreasonable restraints or offensive clauses to give effect to the parties' intentions"). The Court cannot and will not use blue-penciling here to narrow the temporal scope of the Non-Solicitation Provision. *See* *Zimmer, Inc.*, 2014 WL 1317090 at *7 ("'[C]ourts need not do for the employer what it should have done in the first place — write a reasonable covenant.'…Courts can't use the 'blue pencil' doctrine to produce a covenant that, while reasonable, wasn't what the parties intended. Blue penciling this covenant as [the employer] suggests would do precisely that") (citing *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 689 (Ind. 2005)). The Non-Solicitation Provision is overly broad and unenforceable as written, and Mr. Stevenson is entitled to summary judgment on Count 2 of the Amended Complaint, for breach of that provision.

### 4. The Non-Disclosure Provision

The Non-Disclosure Provision in the Agreement states:

> Employee agrees to hold and safeguard for the benefit of the Company all Confidential Information acquired or developed by him during the employment relationship. Employee will not, without the prior written consent of the President of the Company, during the term hereof or thereafter, misappropriate, use for his own advantage, disclose or otherwise make available Confidential Information to any person, except in the good faith performance of Employee's job duties while employed by the Company to persons having a need to know such information for the benefit of the Company or its business.

*              *              *

> Employee agrees that, immediately upon termination of employment, he will re-
> turn to the Company all Confidential Information in his possession or under his
> control.  Employee agrees that he will not retain any copies or reproductions of
> any Confidential Information.

[Filing No. 41-1 at 9-10.]  The Agreement defines Confidential Information to include, among

other things, "customer lists" and "the identities of key personnel and the requirements of the

customers [of] the Company."  [Filing No. 41-1 at 8.]

DSI argues that the Non-Disclosure Provision is "clearly within the ambit of enforceable

[non-disclosure] clauses."  [Filing No. 42 at 37.]  Mr. Stevenson responds that the information

the Non-Disclosure Provision seeks to protect must actually be confidential, and the information

at issue here is not.  [Filing No. 47 at 24.]

A confidentiality agreement "'cannot make secret that which is not secret….'" *Bodemer*

*v. Swanel Beverage, Inc.*, 884 F. Supp. 2d 717, 735 (N.D. Ind. 2012) (quoting *Lanier Prof'l*

*Servs., Inc. v. Ricci*, 192 F.3d 1, 5 (1st Cir. 1999)).  Mr. Stevenson focuses on two items in the

Non-Disclosure Provision's definition of "Confidential Information": "customer lists" and "the

identities of key personnel and the requirements of the customers of [DSI]."  [Filing No. 47 at

23.]  Despite what DSI argues, whether the information covered by the Non-Disclosure Provi-

sion is confidential is at the heart of whether the provision is overbroad because the provision

specifically refers to Confidential Information as defined in the Agreement.  Accordingly, if the

definition of Confidential Information includes items that are not in fact confidential, then the

provision incorporating that definition is overbroad.

Both Mr. Stevenson and DSI submit affidavits regarding whether the items are, indeed,

confidential.  In his affidavit, Mr. Stevenson states that:

- "Information about customers in the specialty building product industry is not confidential. The specialty building product industry is a discrete market, and the customers in Indiana are generally known to the various competitors. DSI and Rugby…have been competing for the same customers for years," [Filing No. 48-1 at 3];

- "Customers in the specialty building product industry are willing to 'shop around' for the best price and will reveal their needs and competing quotes to competitive salespeople. Prices quoted to customers are subject to negotiation and change often based on the product's commodity price at the time," [Filing No. 48-1 at 3]; and

- "Any DSI employee in the Indianapolis Branch, with the exception of truck drivers, could easily access DSI's Customer Lists, Customer Product Preferences, Competitive Pricing, and Competitive Cost Structure on a company computer, even if the employee was not on the sales team or management. These employees included warehouse employees, who were not required to sign non-competition or non-disclosure agreements," [Filing No. 48-1 at 3].

For its part, DSI submits Mr. Dascenzo's affidavit, in which he states:

- "The identity of DSI's customers in Indiana is not published or generally known, and it is information that DSI maintains as confidential and considers proprietary. In particular, DSI's customer lists are considered highly confidential," [Filing No. 41-1 at 2]; and

- "Some of DSI's Indiana customers manufacture or build their own products based on their own designs using the specialized products provided by DSI. Other DSI customers manufacture or build their products according to designs submitted by their own customers. DSI works closely with both types of customers to develop unique specifications for the products DSI provides – specifications that are specially suited to the manufacturing or building process of the particular customer and its ultimate products. To do this, DSI must learn a great deal about each customer's business and manufacturing process, often including highly confidential and proprietary information about the customer's own products and processes," [Filing No. 41-1 at 2].

The testimony DSI and Mr. Stevenson submit to advance their position regarding whether the information at issue is confidential is vague, generalized, and conflicting. The Court cannot conclude from that evidence whether the "customer lists" and "the identities of key personnel and the requirements of the customers of [DSI]" are confidential as a matter of law – which it must do to determine whether the Non-Disclosure Provision is enforceable. The Court finds that

a genuine issue of fact exists at this point in the litigation that precludes partial summary judgment in favor of either DSI or Mr. Stevenson on the issue of whether the Non-Disclosure Provision is enforceable.[7]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** DSI's Motion for Partial Summary Judgment, [Filing No. 41].  Additionally, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Stevenson's Cross-Motion for Partial Summary Judgment, [Filing No. 46], to the extent that it **GRANTS** summary judgment to Mr. Stevenson on Count 1 of the Amended Complaint (breach of the Non-Compete Provision) and Count 2 of the Amended Complaint (breach of the Non-Solicitation Provision), but **DENIES** summary judgment to Mr. Stevenson on Count 3 of the Amended Complaint (breach of the Non-Disclosure Provision).  No partial judgment shall issue, and Counts 3 through 7 will proceed.

**Distribution via ECF only to all counsel of record**

---

[7] Whether the customer lists are confidential versus whether they constitute a protectable interest are separate issues.  As discussed above, information need not be confidential to be protectable.